UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA KAPLAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE ATHLETIC MEDIA COMPANY,<br><br>    Defendant. | Case No. 23-cv-00229-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Re: ECF No. 26 |

Before the Court is Defendant The Athletic Media Company's ("The Athletic") motion to compel arbitration. ECF No. 26. The Court will grant the motion.

## I.   BACKGROUND

Plaintiffs Rebecca Kaplan, John Murphy, Johnny Pappas, Michael Tisa, Charlene Egizi, and Jeff Tibayan purchased subscriptions to The Athletic—"a subscription based-online sports news outlet." ECF No. 27 ¶ 3; *see* ECF No. 21 ¶¶ 49, 55, 61, 67, 73, 79; *see also* ECF No. 27 ¶ 5. The Athletic automatically renews a user's subscription on a monthly or annual basis depending on whether the subscriber purchased a monthlong or yearlong subscription in the first instance. *See* ECF No. 21 ¶ 2. The Athletic updated its Terms of Service on August 5, 2021 ("2021 Terms of Service"), as well as its Privacy Policy. ECF No. 27 ¶ 44. Subscribers, including Plaintiffs, were notified of this update through an overlay on The Athletic's mobile application and website that appeared on top of the content being viewed. *Id.* An image of the overlay appears below:



ECF No. 27-22 at 2.  An identical overlay appeared on The Athletic's website.  *Id.* at 3.  Subscribers could not access any content without clicking on the "I Accept" button.  ECF No. 27 ¶ 44.  Each Plaintiff clicked the button.  *Id.* ¶ 47.

The 2021 Terms of Service contains an arbitration agreement that provides, in relevant part,

> The parties shall use their best efforts to settle any dispute, claim, question, or disagreement arising out of or relating to the subject matter of these Terms directly through good-faith negotiations, which shall be a precondition to either party initiating arbitration.  If such negotiations do not resolve the dispute, it shall be finally settled by binding arbitration in San Francisco, California.  The arbitration will proceed in the English language, in accordance with the JAMS Streamlined Arbitration Rules and Procedures (the "Rules") then in effect, by one commercial arbitrator with substantial experience in resolving intellectual property and commercial contract disputes.

ECF No. 27-20 at 11.  In turn, the JAMS Streamlined Arbitration Rules and Procedures provide, in relevant part, "Jurisdictional and arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."  ECF No. 26-2 at 8.

Plaintiffs subsequently filed suit, alleging that The Athletic's "automatic renewal scheme"

1  fails to comply with California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code
2  § 17600 *et seq.* ECF No. 21 ¶¶ 2–3 (internal quotation marks omitted). As individuals and on
3  behalf of a putative class, Plaintiffs bring claims for (1) violations of California's Unfair
4  Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) conversion; (3) violations of
5  California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) violations of
6  California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (5) unjust enrichment;
7  (6) negligent misrepresentation; and (7) fraud.

Plaintiffs filed the instant motion on May 19, 2023. ECF No. 26. The Court took the motion under submission without a hearing on August 4, 2023. ECF No. 37.

## II.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. The parties agree that the FAA governs the contract at issue in this case. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In determining whether an arbitration agreement exists, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus:

> In considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate was made, a district court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise. Only when there is no genuine issue of material fact concerning the formation of an arbitration

3

1       agreement should a court decide as a matter of law that the parties
        did or did not enter into such an agreement.

2   *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citations omitted) (cited

3   with approval in *Hansen*, 1 F.4th at 670). If the court "concludes that there are genuine disputes

4   of material fact as to whether the parties formed an arbitration agreement, the court must proceed

5   without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until

6   the factual issues have been resolved." *Hansen*, 1 F.4th at 672. If a valid arbitration agreement

7   exists, "the party resisting arbitration bears the burden of proving that the claims at issue are

8   unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

9       If the court is "satisfied that the making of the agreement for arbitration or the failure to

10  comply therewith is not in issue, the court shall make an order directing the parties to proceed to

11  arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims

12  alleged in a complaint are subject to arbitration, the Court "shall on application of one of the

13  parties stay the trial of the action until such arbitration has been had in accordance with the terms

14  of the agreement, providing the applicant for the stay is not in default in proceeding with such

15  arbitration." *Id*. § 3. "[N]otwithstanding the language of § 3, a district court may either stay the

16  action or dismiss it outright when . . . all of the claims raised in the action are subject to

17  arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).

18  **IV.    DISCUSSION**

19      The parties largely dispute whether Plaintiffs agreed to versions of The Athletic's terms of

20  service that predated the 2021 Terms of Service. Because Plaintiffs all pressed the "I Accept"

21  button the overlay corresponding to the 2021 Terms of Service, the Court first turns to the

22  question of whether Plaintiffs entered into a valid, binding contract with The Athletic to arbitrate

23  the instant dispute. The Athletic argues that Plaintiffs formed a contract to arbitrate and that the

24  arbitration agreement in the 2021 Terms of Service delegates the question of arbitrability to the

25  arbitrator. Plaintiffs argue that the 2021 Terms of Service do not apply because Plaintiffs' claims

26  "were implicated at the time Plaintiffs signed up" for the subscription, that the arbitration

27  agreement does not delegate the question of arbitrability to the arbitrator, that the agreement is

28  procedurally and substantively unconscionable, and that the agreement does not cover the dispute

1    at hand.  ECF No. 30 at 23 (emphasis omitted).

### A. Existence of a Contract

The parties first dispute whether The Athletic and Plaintiffs formed a contract to arbitrate.[1] Such "challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017).  This is because "arbitration is a matter of contract and a party cannot be required to submit any dispute which [it] has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

The parties agree that California law applies to the question of contract formation in this case.  ECF No. 26 at 16–17; ECF No. 30 at 11–12.  To form a contract under California law, there must be "actual or constructive notice of the agreement" and a "manifest[ation of] mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023).  The party seeking to compel arbitration has the burden to prove, by preponderance of the evidence, that a contract to arbitrate exists.  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).

The Athletic does not attempt to show that Plaintiffs had actual notice of the 2021 Terms of Service.  To determine whether Plaintiffs had constructive notice, the Court must consider "the design and content of the website and the agreement's webpage." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).  "[A]n enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Oberstein*, 60 F.4th at 515 (quoting

---

[1] The parties dispute the proper characterization of the agreements at issue in this case.  The Court need not resolve this dispute because, as the Ninth Circuit has clarified, so long as the website "provide[s] sufficient notice for constructive assent . . . there [i]s a binding arbitration agreement." *Lee v. Ticketmaster, LLC*, 817 F. App'x 393, 394 (9th Cir. 2020); *see Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (holding that users were afforded sufficient notice even though the textual notices "lie somewhere in between" clickwrap and browsewrap).

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

### 1.     Reasonably Conspicuous Notice

For a notice to be reasonably conspicuous, it "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent . . . user would have seen it." *Id.* (quoting *Berman*, 30 F.4th at 856). "[C]onsumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Nguyen*, 763 F.3d at 1179. Thus, if there is a hyperlink, "the fact that a hyperlink is present must be readily apparent." *Berman*, 30 F.4th at 857.

Here, the overlay disclosing the 2021 Terms and Conditions appeared on subscribers' screens, shaded out the rest of the webpage in black, and prevented users from accessing content on the website and mobile application until users hit the "I Accept" button. The overlay is sufficiently large, all of the language in the overlay pertains to agreement to the Terms of Service and Privacy Policy, and the overlay features a hyperlink in bolded text. The font and format of the overlay are such that any reasonably prudent user necessarily would have seen it. Accordingly, the overlay is reasonably conspicuous.

### 2.     Unambiguous Manifestation of Assent

A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Oberstein*, 60 F.4th at 515 (quoting *Berman*, 30 F.4th at 857). "[A]ll that is required" is that the text of the notice "explicitly alert the user that by . . . proceeding to the next page, the user 'agrees to our Terms of Use.'" *Id.*

The overlay bears express contractual language that would indicate to a user that the user is agreeing to the 2021 terms of use: "By clicking the button below," which reads "I Accept," "you acknowledge and consent to our updated policies." ECF No. 27-22 at 2. Accordingly, Plaintiffs unambiguously manifested their assent to the 2021 Terms of Service, and the Court concludes that a valid contract exists.

Plaintiffs challenge the existence of a contract on grounds unrelated to the foregoing inquiry. First, in connection with their argument as to the existence of a contract, Plaintiffs argue

6

that the terms of the 2021 Terms of Service are not binding because Plaintiffs' "claims were implicated at the time Plaintiffs signed up" for the subscription. ECF No. 30 at 23. This argument is irrelevant to the threshold question of whether a valid contract exists. In substance, Plaintiffs are arguing that the 2021 Terms of Service do not cover the dispute at hand, which goes to the question of arbitrability, not contract formation. More to the point, the caselaw does not recognize the distinction that Plaintiffs are attempting to draw. *See Whalen v. Facebook, Inc.*, No. 20-cv-06361-JST, 2022 WL 19934419, at *2–4 (N.D. Cal. Apr. 11, 2022). To the contrary, "courts have . . . consistently applied arbitration agreements retroactively where the agreements explicitly subsume prior agreements or facially apply to disputes arising prior to the agreement." *DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at *8 (N.D. Cal. Feb. 24, 2017). The 2021 Terms of Service expressly provides that it supersedes prior agreements: "You and The Athletic agree that these Terms are the complete and exclusive statement of the mutual understanding between you and The Athletic, and that it supersedes and cancels all previous written and oral agreements, communications, and other understandings relating to the subject matter of these Terms." ECF No. 27-20 at 13. Plaintiffs first argument is thus without merit.

Second, Plaintiffs argue that the 2021 Terms of Service does not comply with the ALR's notice requirements and is thus unenforceable. Plaintiffs cite no authority in support of extending the notice requirements of the ALR to arbitration agreements, and the Court is aware of none.

**B.      Delegation**

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (citations omitted). Whether the Court or the arbitrator decides arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (alteration omitted)

7

1  (quoting *AT&T Techs.*, 475 U.S. at 649).  "Clear and unmistakable evidence of an agreement to
2  arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an
3  express agreement to do so.'"  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016)
4  (ellipses in original) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

5  The Ninth Circuit has held that incorporation of rules such as the JAMS rules "constitutes
6  clear and unmistakable evidence that [the] contracting parties agreed to arbitrate arbitrability."
7  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see Shierkatz Rllp v. Square, Inc.*,
8  No. 15-cv-2202-JST, 2015 WL 9258082, at *6 (N.D. Cal. Dec. 17, 2015).  However, after noting
9  that "[t]he issue of the sophistication of the parties was raised at oral argument" and explaining
10 that "[o]ur holding today should not be interpreted to require that the contracting parties be
11 sophisticated or that the contract be 'commercial' before a court may conclude that incorporation
12 of the . . . rules constitutes 'clear and unmistakable' evidence of the parties' intent," the Ninth
13 Circuit "limit[e]d [its] holding to the facts of the present case, which do involve an arbitration
14 agreement 'between sophisticated parties.'"  *Id.* at 1131 (quoting *Oracle Am., Inc., v. Myriad
15 Group A.G.*, 724 F.3d 1069, 1075 & n.2 (9th Cir. 2013)).  The Ninth Circuit stated that its holding
16 did "not foreclose the possibility that this rule could also apply to unsophisticated parties or to
17 consumer contracts," but it explicitly left that question open.  *Id.* at 1130–31.

18 "Where at least one party is unsophisticated, judges in this district routinely find that the
19 incorporation of the . . . rules is insufficient to establish a clear and unmistakable agreement to
20 arbitrate arbitrability."  *Magill v. Wells Fargo Bank, N.A.*, No. 4:21-cv-01877 YGR, 2021 WL
21 6199649, at *5 (N.D. Cal. June 25, 2021) (citing *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d
22 1240, 1253 (N.D. Cal. 2019); *Ingalls v. Spotify USA, Inc.*, No. 16-0353 WHA, 2016 6679561, at
23 *3–4 (N.D. Cal. Nov. 14, 2016)).  This Court has thrice before declined to extend *Brennan* to a
24 case involving an unsophisticated party.  *Hooper v. Jerry Ins. Agency, LLC*, --- F.Supp.3d ----, No.
25 22-cv-04232-JST, 2023 WL 3992130, at *7 (N.D. Cal. June 1, 2023); *Meadows v. Dickey's
26 Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1077–79 (N.D. Cal. 2015); *Vargas v. Delivery
27 Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at *7–8 (N.D. Cal. Mar. 14, 2016).

28 The Athletic "does not dispute that the Court can consider these particular Plaintiffs to be

8

1  'unsophisticated.'" ECF No. 38 at 3.  Accordingly, the Court concludes that the incorporation of
2  the JAMS rules into the 2021 Terms of Service is insufficient to establish the parties' clear and
3  unmistakable agreement to arbitrate arbitrability.

### C. Unconscionability

A contract may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Unconscionability "refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013)).  An agreement may be found to be "invalid if it is both procedurally and substantively unconscionable." *Sanchez v. Carmax Auto Superstores California LLC*, 224 Cal. App. 4th 398, 402 (2014).  "Procedural unconscionability focuses on oppression and surprise due to unequal bargaining power, and substantive unconscionability turns on overly harsh or one-sided results." *Id*.  The unconscionability inquiry "employs a sliding scale—the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  "As the party opposing arbitration," Plaintiff "bears the burden of proving . . . unconscionability." *Sonic-Calabasas*, 57 Cal. 4th at 1145 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

"Procedural unconscionability analysis focuses on oppression or surprise." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006).  "*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a … form." *Kho*, 8 Cal. 5th at 126 (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012)) (emphases in original).  "Oppression can be established 'by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it

9

was oppressive.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). An adhesive contract is a standardized form offered by the party with superior bargaining power "on a take-it-or-leave-it basis," *id.* (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)), but such a contract is not "per se unconscionable," *Poublon*, 846 F.3d at 1260. Other circumstances to be considered include but are not limited to:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (2015)).

"Substantive unconscionability examines the fairness of a contract's terms." *Lim*, 8 F.4th at 1001. The doctrine "is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Poublon,* 846 F.3d at 1261 (citation omitted). "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one sided." *Lim*, 8 F.4th at 1002. "[S]ubstantive unconscionability exists when a fee-shifting clause creates for employees a 'greater financial risk in arbitrating claims than they would face if they were to litigate those same claims in federal court.'" *Id.* (quoting *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010), *disapproved of on other grounds by Poublon*, 846 F.3d at 1265–66). When the contract contains a forum-selection clause, the clause is substantively unconscionable if it is "'unreasonable' in that 'the forum selected would be unavailable or unable to accomplish substantial justice.'" *Id.* (quoting *Poublon*, 846 F.3d at 1265). In considering such clauses, "the court] must take into account the respective circumstances of the parties." *Id.* (quoting *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1288 (9th Cir. 2006)).

Plaintiffs have not established that the contract is procedurally unconscionable. Although the there is "is a degree of procedural unconscionability" in contracts of adhesion, *Lag Shot LLC v. Facebook, Inc.* 545 F. Supp. 3d 770, 779 (N.D. Cal. 2021) (quoting *Sanchez v. Valencia*

*Holding Co., LLC* , 61 Cal. 4th 899, 915 (2015)), "an arbitration agreement is not adhesive if there is an opportunity to opt out of it," *id.* (quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016)). The arbitration agreement in the 2021 Terms of Service allows subscribers to opt out by mailing written notice within 30 days of acceptance. ECF No. 27-20 at 12. The Ninth Circuit has held that an arbitration agreement was not adhesive and therefore not procedurally unconscionable where the agreement allows individuals to "opt out of arbitration by delivery notice of their intent to opt out . . . within 30 days either in person or by overnight delivery service," *Mohamed*, 848 F.3d at 1206, 1210, and this Court reached the same holding with respect to an arbitration agreement that allowed individuals to opt out "by mail within a 30-day period." *Lag Shot*, 545 F. Supp. 3d at 779. Accordingly, the arbitration agreement is not procedurally unconscionable.[2] And "because both procedural and substantive unconscionability must be present for an agreement to be unenforceable," the Court "need not reach the question whether the agreement[] here w[as] substantively unconscionable." *Mohamed*, 848 F.3d at 1211.

### D.     Arbitrability

Plaintiffs argue that the 2021 Terms of Service do not apply to their claims because their claims "have nothing to do with any aspect of the Terms." ECF No. 30 at 28. The Court disagrees. The arbitration agreement in the 2021 Terms of Service applies to "any dispute, claim, question, or disagreement arising out of or relating to the subject matter of these Terms." ECF No. 27-20 at 10. The Terms, in turn, contain neighboring sections titled "Subscriptions," "Auto-Renewal for Subscriptions," and "Reaffirmation of Authorization," ECF No. 27-20 at 6–7, that expressly describe the "automatic renewal scheme" that underpins all of Plaintiffs' claims, ECF No. 21 ¶ 1. The arbitration agreement in the 2021 Terms of Service thus clearly applies to Plaintiffs' claims. Accordingly, the Court will compel Plaintiffs to arbitrate.

---

[2] Plaintiffs assert that the arbitration agreement at issue is procedurally unconscionable because Plaintiffs "are not sophisticated users." ECF No. 30 at 27 (internal quotation marks omitted). The Ninth Circuit has expressly rejected this argument. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002).

### E. Stay or Dismiss

The parties agree that a stay rather than a dismissal is appropriate. The Court will stay the case consistent with the Ninth Circuit's "preference for staying an action pending arbitration rather than dismissing it." *See MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014)

### CONCLUSION

For the foregoing reasons, the Court grants The Athletic's motion to compel and stays these proceedings. The Clerk shall administratively close the file. This order shall not be considered a dismissal or disposition of this action against any party. If further proceedings become necessary, any party may initiate them in the same manner as if this order had not been entered.

**IT IS SO ORDERED.**

Dated: December 8, 2023



JON S. TIGAR
United States District Judge

12